IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXANDER DRAIN              :          CIVIL ACTION
                            :
     v.                     :
                            :
WILLIAM McLEOD, et al.,      :          NO. 04-1589

MEMORANDUM AND ORDER

McLaughlin, J.                          January 19, 2007

        The plaintiff, Alexander Drain, has sued various prison
officials under 42 U.S.C. § 1983 for allegedly depriving him of
his constitutionally protected rights by assaulting him and
transferring him into administrative segregation for several
months.  The plaintiff has moved for leave to file a second
amended complaint.  The Court will grant the motion without
prejudice to the defendants' right to raise the issues of failure
to exhaust administrative remedies and failure to comply with
applicable statutes of limitations in a motion for summary
judgment.

I.    BACKGROUND

        This lawsuit arises from an alleged assault that took
place at Curran Fromhold Correctional Facility ("CFCF") on
November 29, 2002.  According to the plaintiff, four correctional
officers pulled him from his cell, placed him into another cell
and proceeded to punch and kick him in the head, chest, stomach

and testicles.  At the time of the attack, the plaintiff was able to identify only two of the four correctional officers because two of the officers had allegedly covered their nametags to conceal their identities.

The plaintiff claims that he complained to CFCF officials immediately after the incident.  Instead of advising him of his administrative remedies, CFCF officials left him in a cell by himself, unable to communicate with other inmates or CFCF staff members.  On December 1, 2002, the plaintiff was transferred to the Detention Center Prison Health Services Wing ("PHSW"), where he was housed in the psychiatric ward.  According to the plaintiff, he neither received a handbook nor did he receive any orientation regarding proper grievance procedures while at CFCF or PHSW.

Upon arrival at PHSW, the plaintiff alleges that he repeatedly asked for grievance forms.  The guards at PHSW, however, refused to provide the forms, simply telling the plaintiff to "shut up."  This refusal to provide grievance forms allegedly continued throughout his two-and-a-half month stay in administrative segregation at PHSW.

The plaintiff nevertheless continued to complain about the assault.  Soon after his arrival at PHSW, a social worker alerted the Philadelphia Prison System ("PPS") of the plaintiff's complaints, and on or about December 3, 2002, PPS sent a

lieutenant to interview the plaintiff about the incident.  At the interview, the lieutenant took the plaintiff's statement on an "Inmate Account of Involvement in Use of Force Incident" form.  This interview commenced an internal affairs investigation into the matter.  A few days after the commencement of the investigation, a sergeant interviewed the plaintiff again, informed the plaintiff that a full investigation would be conducted and told the plaintiff that he needed to do nothing more with regard to reporting the incident.

After receiving no word as to the status of the investigation for almost a year, the plaintiff sent a letter to the internal affairs unit in October, 2003.  He received no reply.  Over four years after its commencement, the investigation is still ongoing.

On July 14, 2004, the plaintiff, proceeding pro se, filed a complaint in this action, naming as defendants Warden Walter Dunleavy, Deputy Warden Richard Pitt and Correctional Officers William McCloud and Matthew Czarnecki.  The plaintiff also named as defendants John Does 1 and 2, who represent the two correctional officers the plaintiff was unable to identify at the time of the alleged assault.

On January 5, 2005, the parties participated in a status conference.  At the status conference, the defendants suggested that the matter be put into civil suspense pending the

-3-

resolution of the internal affairs investigation.  The defendants were careful to note that the stay they sought "would not affect Mr. Drain's ability to add those individuals or anyone else that might come out as a result of the investigation."  When questioned about whether the plaintiff needed to do anything more to exhaust his administrative remedies, the defendants stated that although prisoners typically must follow a specific grievance procedure, "a complaint was made [by the plaintiff] and registered with internal affairs [] that would almost moot out the necessity for [] other paperwork to be filed."  The plaintiff subsequently agreed to the stay, and the Court entered an appropriate order.  The Court also offered to seek counsel for the plaintiff should the internal affairs investigation uncover any wrongdoing.  The plaintiff accepted this offer.

        Over the following year, the parties participated in three more telephone conferences.  Each time, the defendants informed the Court that the internal affairs investigation had not yet concluded and requested that the stay be continued.  According to the defendants, continuance of the stay would be beneficial because the internal investigation "will really be the bulk of the discovery that will be needed to be done."  The Court granted this request on March 10 and then again on May 17.  At the May 17 conference, the Court decided to begin seeking counsel

for the plaintiff immediately.  The Court thereafter obtained
counsel, which was duly appointed on August 17, 2005.

On December 7, 2005, the parties participated in a
third telephone conference, where the defendants informed the
Court that the internal affairs investigation still had not yet
concluded.  At that point, the parties agreed that the case
should be removed from civil suspense.  The parties established a
discovery schedule and set a date on which the plaintiff could
file an amended complaint, which the plaintiff filed on May 8,
2006.

The amended complaint named as defendants Czarnecki,
McLeod and John Does I-V.[1]  John Does I and II again represented
the two correctional officers who had allegedly concealed their
nametags while assaulting the plaintiff.  John Doe III
represented a fifth correctional officer who allegedly acted as a
lookout while the assault was taking place, and John Does IV and
V represented the prison officials who were responsible for
transferring the plaintiff to PHSW and placing him in
administrative segregation.  The plaintiff was unable to name the
actual defendants because he had not yet obtained such
information from the internal affairs investigation and because

---

[1] The Court formally dismissed defendants Dunleavy and Pitt
on May 11, 2006, because they were not named as defendants in the
amended complaint.

-5-

the plaintiff's attorney was on medical leave until August 1, 2006, thereby delaying written discovery.

On August 4, 2006, the plaintiff propounded written discovery, requesting photographs of the correctional officers who were on duty at the time of the alleged assault, as well as documents relating to the plaintiff's transfer to PHSW.  On September 15, 2006, the plaintiff received the photographs and was for the first time able to identify Correctional Officers Larry Hutley, Patrick Gordon and Eliezer Ramos, Jr., as the other officers who were involved in the alleged assault.  On October 3, 2006, the plaintiff received documents regarding his transfer to PHSW and was consequently able to determine that Warden Dunleavy, Deputy Warden Pitt and Shift Supervisor R. Shelton were the individuals responsible for placing him in administrative segregation.

On October 24, 2006, the plaintiff moved for leave to file a second amended complaint to substitute the names of the previously unidentified correctional officers and prison administrators for John Does I-V.  After receiving the defendants' opposition to the motion, the Court instructed both parties to submit supplemental briefs addressing (i) what administrative remedies were available to the plaintiff, (ii) whether the plaintiff had properly exhausted these administrative

remedies, and (iii) when, exactly, the plaintiff had exhausted these administrative remedies.

Attached to their supplemental memoranda, the parties provided PPS' administrative grievance procedures.[2]  Under these procedures, an inmate must file a written grievance within ten days of a grievable event.  The grievance is then evaluated by the Warden of the relevant facility.  If the prisoner is not satisfied with the Warden's decision, he may appeal to the Commissioner.  These procedures were developed by PPS to "provide inmates an internal grievance procedure for administrative resolution of complaints...so as to reduce the need for litigation and afford [prison] staff the opportunity to review and correct...[prison] operations."

II.  <u>ANALYSIS</u>

Federal Rule of Civil Procedure 15(a) states that "leave [to amend a pleading] shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a) (2006).  Because Rule 15 embodies a liberal approach to pleading, the Supreme Court has determined that leave to amend should be granted unless equitable

---

[2] Although the opposing parties provided different versions of PPS' administrative grievance procedures -- the defendants provided the procedures that were in effect at the time of the alleged assault, and the plaintiff provided the procedures that became effective on July 29, 2005 -- the portion of the procedures that is relevant to the case at hand is virtually identical in both versions.

considerations render such leave unjust.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Factors to consider when deciding whether leave to amend is unjust include bad faith, dilatory motive, undue delay, undue prejudice and futility.  Id.  The United States Court of Appeals for the Third Circuit has consistently recognized that "prejudice to the non-moving party is the touchstone for the denial of an amendment."  Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 1996) (quoting Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).

        The defendants do not argue, and nothing in the record suggests, that the plaintiff has acted in bad faith or possessed a dilatory motive in moving for leave to amend.  The defendants instead argue that leave to amend should be denied because (i) the plaintiff has exhibited undue delay, (ii) an amendment at this juncture would unduly prejudice the newly named defendants, and (iii) an amendment would be futile because the applicable statute of limitations expired on November 29, 2004 -- two years after the alleged assault.

    A.    Undue Delay

        Delay alone is an insufficient ground for denying leave to amend.  Arthur, 434 F.3d at 204.  Only undue delay -- delay that places an unwarranted burden on the court or an unfair burden on the opposing party -- will constitute a sufficient

-8-

ground for denial.  Cureton v. Nat'l Collegiate Athletic Ass'n,
252 F.3d 267, 273 (3d Cir. 2001).  Delay will become undue when a
moving party has unjustifiably failed to take advantage of
previous opportunities to amend.  Arthur, 434 F.3d at 204.  The
question of whether delay is undue therefore hinges on the moving
party's reasons for not amending sooner.  Cureton, 252 F.3d at
273.

        In the case at hand, the delay was neither so great nor
so unjustified as to warrant refusal to grant leave to amend.
Although the case was filed in mid-2004, the Court almost
immediately placed the action into civil suspense.  Once the
Court ordered the case out of suspense, only ten and a half
months elapsed before the plaintiff filed this motion for leave
to amend.  Furthermore, discovery during this time period was
complicated not only by the plaintiff's status as an incarcerated
individual, but also by the fact that the plaintiff's court-
appointed attorney was on medical leave until August 1, 2006.

        Although the plaintiff has amended his complaint since
the case was ordered out of civil suspense, the plaintiff did
not, at the time of amendment, have knowledge of the newly named
defendants' identities.  The plaintiff has thus not failed to
take advantage of numerous opportunities to amend.  On the
contrary, the plaintiff waited only one week after learning the

-9-

identities of the newly named defendants before filing the
present motion.

      B.   <u>Prejudice</u>

      Substantial or undue prejudice to the non-moving party
is a sufficient ground for denying leave to amend.  <u>Cureton</u>, 252
F.3d at 273.  The issue of prejudice hinges on the hardship to
the defendant.  <u>Id.</u>  More specifically, the United States Court
of Appeals for the Third Circuit has focused on whether the
proposed amendment would result in additional discovery, cost
and/or preparation on the part of the non-moving party.  <u>Id.</u>

      In the case at hand, the proposed amendment will cause
the newly named defendants to suffer little or no prejudice.
Substituting the newly named defendants for John Does I-V will
not substantially prolong discovery, the bulk of which defendants
have conceded will be accomplished by the internal affairs
investigation.  Aside from requesting the newly named officers'
personnel files and certain documents relating to Mr. Drain's
transfer, the plaintiff does not plan on propounding any
additional written discovery at all, and no depositions have yet
been taken.  Finally, the defenses of the newly named defendants
will likely parallel those of the defendants who were already
named in the complaint, thereby minimizing the additional costs
imposed on the defendants by the proposed amendment.

-10-

C.    <u>Futility</u>

Futility is a sufficient ground for denying leave to amend.  <u>Foman</u>, 371 U.S. at 182.  An amendment is futile and thus properly denied when the claims to be added are barred by the applicable statute of limitations.  <u>Jablonski v. Pan Am. World Airways, Inc.</u>, 863 F.2d 289, 292 (3d Cir. 1988).  The applicable statute of limitations for the claims the plaintiff seeks to add, all of which arise under § 1983, is borrowed from the law of the state in which the district court sits.  <u>Lake v. Arnold</u>, 232 F.3d 360, 368 (3d Cir. 2000).  In Pennsylvania, the governing statute prescribes a two-year limitations period.  42 Pa. Cons. Stat. § 2254 (2006).  In the case at hand, the events giving rise to the plaintiff's § 1983 claims occurred on November 29, 2002.  The statute of limitations on these claims would therefore have expired on November 29, 2004, unless some sort of tolling applies.

1.    Tolling the Statute of Limitations While the
      <u>Plaintiff Exhausted His Administrative Remedies</u>

Before a prisoner may bring a § 1983 claim, the Prisoner Litigation Reform Act ("PLRA") requires that he or she exhaust all available administrative remedies. 42 U.S.C. § 1997e(a) (2006).  This requirement mandates proper exhaustion, <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2382 (2006), and it contains no exception for futility. <u>Nyhuis v. Reno</u>,  204 F.3d 65, 78 (3d Cir.

2000).  Recognizing that fulfillment of such a strict requirement could take a substantial amount of time, courts have uniformly held that the statute of limitations on a § 1983 claim is tolled while a prisoner exhausts his available administrative remedies. Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000); Cooper v. Beard, No. 06-0171, 2006 WL 3208783, at *8 (E.D. Pa. November 2, 2006).

Because a determination of whether and when the plaintiff exhausted his administrative remedies could affect the timeliness of the claims contained in the proposed amendment, the Court ordered the parties to submit supplemental memoranda to clarify the matter.  The plaintiff responded by arguing that the internal affairs investigation constituted an administrative remedy, and therefore its pendency tolled the statute of limitations applicable to his claims.  The defendants, on the other hand, argue that the PPS administrative grievance system constituted the plaintiff's sole administrative remedy, and therefore the pendency of the internal affairs investigation did not toll the statute of limitations on the plaintiff's claims.

Two Unites States Courts of Appeals have considered the question of whether an internal investigation constitutes an administrative remedy that exists in addition to, or in lieu of, a prison's administrative grievance system; both have concluded

-12-

that it does not.  Panaro v. City of North Las Vegas, 432 F.3d 949, 953-54 (9th Cir. 2005); Freeman v. Francis, 196 F.3d 641, 644 (6th Cir. 1999).  In Panaro, the United States Court of Appeals for the Ninth Circuit explained that it was bound by the literal command of the PLRA, which precludes an action by a prisoner "until such administrative remedies as are available have been exhausted."  432 F.3d at 953 (citing 42 U.S.C. § 1997e(a)).  According to the court, the PLRA's exhaustion requirement is directed at the *prisoner's* administrative remedies.  Id. (emphasis in original).  Although an internal investigation may result in an adverse action against the prison officials under scrutiny, it does not offer a remedy to the prisoner.  Id.  The only potential remedy available to the prisoner was through the prison's administrative grievance procedure.  Id.  Likewise, in Freeman, the United States Court of Appeals for the Sixth Circuit concluded that because the PLRA's exhaustion requirement is directed at exhausting the *prisoner's* administrative remedies, internal investigations do not satisfy the requirement of the statute.  See 196 F.3d at 644 (emphasis in original).

          This Court agrees with the Sixth and Ninth Circuits: an internal investigation does not constitute an administrative remedy that is available in addition to, or in lieu of, a prison's administrative grievance procedure.  Not only is this

interpretation consistent with the language of the PLRA as pointed out in Panaro and Freeman, but it is also consistent with what the Supreme Court states are the two main purposes of an exhaustion requirement: the protection of administrative agency authority and the promotion of efficiency.  Woodford, 126 S. Ct. at 2385.

Limiting a prisoner's administrative remedies to a prison's grievance system protects administrative agency authority not only by providing the agency with a proper "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," but also by "discouraging disregard of the agency's procedures." Id.  Such a limitation would also promote efficiency by standardizing the procedures that a prisoner must follow in order to exhaust.  Indeed, PPS adopted its inmate grievance system to "provide inmates an internal grievance procedure for administrative resolution of complaints...so as to reduce the need for litigation and afford [prison] staff the opportunity to review and correct...[prison] operations."

In the case at hand, it is undisputed that the plaintiff did not comply with PPS' two-tiered grievance system. Although his filling out an "Inmate Account of Involvement in Use of Force Incident" form may constitute the timely filing of a written grievance, the plaintiff neither followed up with the

-14-

Warden, nor did he file an appeal with the Commissioner.  The plaintiff instead relied on the representations of various prison officials, all of whom led the plaintiff to believe that the commencement of the internal affairs investigation eliminated his need to exhaust his administrative remedies.  This reliance is understandable; however, it does not convert the internal affairs investigation into an administrative remedy.[3]  As discussed above, the administrative remedies available to the prisoner were outlined in PPS' administrative grievance procedures.  The pendency of the internal affairs investigation therefore did not toll the statute of limitations on the claims the plaintiff seeks to add.

The Court is careful to note, however, that this conclusion in no way constitutes a finding that the plaintiff's claims are barred for failure to exhaust administrative remedies. Under Third Circuit law, a prisoner may be excused from the PLRA's exhaustion requirement if his or her administrative remedies were not "available" at the relevant time period.  See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).  In Mitchell, for example, the court ruled that a prisoner's administrative remedies were not "available" when guards denied him access to necessary grievance forms.  Id.  Likewise, in Brown v. Croak, the

---

[3] As discussed more fully below, these representations are instead relevant to whether the statute of limitations on the plaintiff's claims should be equitably tolled.

court ruled that administrative remedies were not "available" when guards misled a prisoner into believing that he could not file a grievance until after the conclusion of an internal investigation, the completion of which was indefinitely delayed. 312 F.3d 109, 111-13 (3d Cir. 2002).

In the case at hand, the plaintiff has submitted undisputed evidence that he was both denied access to necessary grievance forms and led to believe that he could not proceed with his case until after the conclusion of an internal investigation. The Court will therefore reserve judgment on whether the plaintiff's claims are barred for failure to exhaust administrative remedies until such time as an appropriate motion for summary judgment is submitted.

2.   <u>Equitable Tolling</u>

Under Third Circuit law, a court may equitably toll[4] a statute of limitations when "the principles of equity would make the rigid application of a limitation period unfair."  <u>LaCava v. Kyler</u>, 398 F.3d 271, 275 (3d Cir. 2005).  Courts have been careful to point out, however, that equitable tolling should be applied sparingly and "only in the rare situation where [it] is

---

[4] Although the United States Court of Appeals for the Third Circuit has not directly addressed the issue in a reported opinion, numerous district courts in the Third Circuit have assumed that § 1983 claims are subject to equitable tolling. <u>See</u>, e.g., <u>Edwards v. Media Borough Council</u>, 430 F. Supp. 2d 445, 450-51 (E.D. Pa. 2006).

demanded by sound legal principles as well as the interests of justice." Id.  The United States Court of Appeals for the Third Circuit has set forth three circumstances in which equitable tolling is appropriate: (i) where the defendant has actively misled the plaintiff; (ii) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; and (iii) where the plaintiff has timely asserted his or her rights, but has mistakenly done so in the wrong forum.  Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  In addition to falling within one of these circumstances, a plaintiff must exhibit reasonable diligence in attempting to investigate and bring his claims.  LaCava, 398 F.3d at 275-76.

In the case at hand, the plaintiff has submitted undisputed evidence that he was repeatedly prevented from asserting his rights by prison officials and their attorneys. According to the plaintiff, when he asked for grievance forms to report the alleged assault, prison guards simply told the plaintiff to "shut up."  The plaintiff nevertheless continued complaining to anyone who would listen.  His efforts eventually led to the commencement of an internal affairs investigation.  As part of the investigation, the plaintiff was interviewed by a sergeant, who misled the plaintiff into believing that he needed to take no further action with regard to reporting his complaint.

-17-

Even after commencing the present suit -- which was filed before the expiration of the applicable statute of limitations -- the plaintiff was further prevented from asserting his rights.  In his original complaint, he was unable to name three of his attackers because they concealed their nametags. When this issue was addressed at the first status conference, counsel for the defendants requested that the action be stayed pending the resolution of the internal affairs investigation, which would provide the defendant with all the information he needed.  Indeed, defense counsel was careful to note that the stay "would not affect Mr. Drain's ability to add those individuals or anyone else that might come out as a result of the investigation."  The defendant, proceeding pro se, relied on this representation and agreed to the stay.

After a year of waiting, the Court ordered the case out of civil suspense.  At this point, the plaintiff's attempts to uncover the identities of the unknown "Doe" defendants were further hampered by his court-appointed attorney's need to take medical leave.  Upon learning the identities of the "Doe" defendants, however, the plaintiff immediately moved for leave to amend.

Given these undisputed facts, the Court will not find that the plaintiff's amendment is futile.  Indeed, these facts suggest that the plaintiff may be entitled to equitable tolling.

-18-

The state of the record, however, prevents this Court from making such a finding at this stage.  The Court will therefore GRANT the plaintiff's motion for leave to amend without prejudice to the defendants' right to raise the issue of failure to comply with applicable statutes of limitations in a motion for summary judgment.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXANDER DRAIN                    :            CIVIL ACTION
                                   :
        v.                         :
                                   :
WILLIAM McLEOD, et al.,            :            NO. 04-1589

ORDER

AND NOW, this 19th day of January, 2007, upon
consideration of the plaintiff's motion for leave to amend (Doc.
No. 49), the defendants' opposition thereto (Doc. No. 51), the
plaintiff's supplemental memorandum of law in support of his
motion for leave to amend (Doc. No. 56), the defendants'
supplemental memorandum of law in opposition to the plaintiff's
motion for leave to amend (Doc. No. 57), and the plaintiff's
reply thereto (Doc. No. 58), IT IS HEREBY ORDERED that the motion
is GRANTED for the reasons stated in the accompanying memorandum
without prejudice to the defendants' right to raise the issues of
failure to exhaust administrative remedies and failure to comply
with applicable statutes of limitations in a motion for summary
judgment.  Warden Walter Dunleavy, Deputy Warden Richard Pitt,
Shift Supervisor R. Shelton and Correctional Officers Larry
Hutley, Patrick Gordon and Eliezer Ramos, Jr., shall be
substituted as named defendants for John Does I-V.

BY THE COURT:


<u>/s/ Mary A. McLaughlin</u>
MARY A. McLAUGHLIN, J.